**Stephen SCHULZ, Plaintiff,**

v.

**William J. HUGHES, et al. Defendants.**

**No. CIV.A.01–537.**

United States District Court, E.D. Pennsylvania.

March 6, 2003.

---

Stephen Schulz, Pro Se, West Long Branch, NJ, for Plaintiffs.

Linda Shafer Bocchino, Esquire, U.S. Attorney's Office, Philadelphia, for Defendants.

## MEMORANDUM AND ORDER

KATZ, Senior District Judge.

Now before the court are the Defendant's Petition for Reconsideration of this Court's Order of February 12, 2003, the Plaintiff's response thereto, and the Plaintiff's Declaration setting forth his reasons for his Freedom of Information Act request.

### I. Background

This case arises out of pro se Plaintiff Stephen Schulz's Freedom of Information Act (FOIA) requests. On September 28, 2000, Schulz requested copies of all United States Probation Office records that mentioned his name, government records providing statistics about delays in criminal trials and other proceedings, and information about persons in custody due to federal prosecution in Camden, New Jersey for 1979 and for 1995 through 2000.

After evaluating his requests, the Government advised Schulz by letter dated June 1, 2001 that approximately 5,200 pages of the Probation Office records that he requested were non-public documents and grand jury materials, which would not be disclosed pursuant to FOIA, 5 U.S.C. § 552(b)(3), in conjunction with the Federal Rules of Criminal Procedure 6(e); §§ 552(b)(5),(6), and (7)(A)-(C); and the Privacy Act, 5 U.S.C. § 552a(j)(2).[1] Ap-

---

1. Section 552(b)(3) states that the section providing for FOIA disclosures "does not apply to matters that are ... specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld."

proximately 210 pages of Probation Office records, however, could be made available upon request.

The Government had already advised Schulz by letter dated October 31, 2000, that the information he requested about persons in federal custody could not be disclosed pursuant to FOIA because those individuals were entitled to privacy protection under FOIA exemptions codified at 5 U.S.C. § 552(b)(6), (b)(7)(c), and the Privacy Act, 5 U.S.C. § 552a.[2] In another letter dated October 31, 2000, the Government informed Schulz that the statistical information he requested did not exist and the government had no duty under FOIA to create new records. In its written re-

---

Subsection (b)(5) bars FOIA requests for "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." Subsection (b)(6) bars requests for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Subsections (b)(7)(A)-(C) bar requests for "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information could reasonably be expected to interfere with enforcement proceedings, would deprive a person of a right to a fair trial or an impartial adjudication, [or] could reasonably be expected to constitute an unwarranted invasion of personal privacy."

Federal Rule of Criminal Procedure 6(e) restricts the disclosure of federal grand jury proceedings.

The Privacy Act, at 5 U.S.C. § 552a(j)(2), applies to records maintained on individuals and provides that the head of any agency may promulgate rules concerning disclosure if the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws, including police efforts to prevent, control, or reduce crime or to apprehend criminals, and the activities of prosecutors, courts, correctional, probation, pardon, or parole authorities, and which consists of:

---

sponses to Schulz, the Government also advised him of his right to appeal the determination to the Office of Information and Privacy.[3] The Government assessed a fee of $560.00 against Schulz for processing these three searches.

On June 20, 2001, Schulz wrote to the Executive Office of United States Attorneys (EOUSA), which had processed his requests, and asked for a waiver of the search fee because of his indigence and asserted that his request was being sought in the public interest. The EOUSA responded in a letter dated June 28, 2001 that indigence was not a factor in considering whether or not to waive fees under 28

---

(A) information compiled for the purpose of identifying individual criminal offenders and alleged offenders and consisting only of identifying data and notations of arrests, the nature and disposition of criminal charges, sentencing, confinement, release, and parole and probation status;

(B) information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual; or

(C) reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."

2. Section 552(b)(6) states that the section providing for FOIA disclosures "does not apply to matters that are ... personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Subsection (b)(7)(c) excepts "records or information compiled for law enforcement purposes" to the extent that such production "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The Privacy Act, 5 U.S.C. § 552a, places various restrictions on records maintained on individuals, such as those in federal custody.

3. Schulz claims that the government did not inform him of his OIP appeal rights.

C.F.R. § 16.11(k)[4] and reiterated that Schulz had not demonstrated that he qualified for a waiver by proving that the requests were made were in the public interest.

Before the EOUSA issued this determination, Schulz had already filed this federal lawsuit on February 6, 2001, seeking a fee waiver and a Vaughn Index from the EOUSA. The Government responded that Schulz had failed to exhaust his administrative remedies because he had not paid the search fee; it also sought dismissal of the complaint on the merits. This court dismissed plaintiff's amended complaint without prejudice, "with leave to refile the Complaint if plaintiff does not receive the documents at issue upon payment of the search fees or upon narrowing his request for specific items." *See* Order dated November 19, 2001. On appeal, the Third Circuit remanded with instructions for the court to address two issues: "(1) whether Schulz, because of his incarcerated status, is entitled to a waiver of the search fees in toto, in part, or not at all,[5] and (2) whether the Government is required to provide him with a Vaughn Index for all records or documents for which it claims immunity under the Freedom of Information Act." Pursuant to this court's Order dated December 13, 2002, both parties submitted briefs addressing these issues within sixty days.

On February 12, 2003, this court granted Plaintiff's Motion for Waiver of Freedom of Information Search Fees and Production of Vaughn Index, finding that Schulz was entitled to a waiver of the FOIA search fees and a Vaughn Index for materials that would not be disclosed. The Government has filed a Petition for Reconsideration.

## II. Discussion

### A. Fee Waiver or Reduction

Under FOIA, waiver or reduction of the search and duplication fees is allowed as an exception to the general rule that the requesting party should cover these costs if "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government and is not primarily in the commercial interest of the requester." *See* 5 U.S.C. § 552(a)(4)(A)(iii); *Kissinger v. Reporters Comm. for Freedom of the Press, et al.,* 445 U.S. 136, 153–54, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980) (recognizing congressional intent that persons making FOIA requests must generally pay for the costs of document search and duplication). In determining whether disclosure of the requested material meets this standard, the government must consider whether the request concerns identifiable activities of the federal government, the information would be meaningfully informative, contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester, and whether the public's understanding of the area would be enhanced by the disclosure to a significant extent. *See* 28 C.F.R. § 16.11(k)(2). Upon judicial review, "[a]n agency's finding that a fee waiver does not satisfy the public interest standard will be upheld unless the finding is arbitrary or

---

4. 16 C.F.R. § 16.11(k) provides that fees will be reduced or waived if "the requester has demonstrated that: (i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (ii) Disclosure of the information is not primarily in the commercial interest of the requester."

5. As the Government points out in its brief, plaintiff is no longer incarcerated.

capricious." *Nat'l Treasury Employees Union v. Griffin,* 811 F.2d 644, 647 (D.C.Cir.1987).

FOIA also requires that "the requester not have a commercial interest in the disclosure of the information sought." *See Larson v. C.I.A.,* 843 F.2d 1481, 1483 (D.C.Cir.1988). Although Mr. Schulz may have a personal interest in the information sought, the government has not argued that he has any commercial interest in such disclosure and the court finds none upon its own examination.

There is no special provision in FOIA for reduced fees based on indigence or incarcerated status. *See Ely v. Postal Service,* 753 F.2d 163, 165 (D.C.Cir.1985) (per curiam), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2338, 85 L.Ed.2d 854 (1985) ("The fee waiver provision in the Freedom of Information Act was enacted to ensure that the public would benefit from any expenditure of public funds for the disclosure of public records. Congress rejected a fee waiver provision for indigents.") (citations omitted). Therefore, the only consideration is whether or not his FOIA request satisfies the public interest standard.

The Government argues that the information requested by Mr. Schulz deals with his own prosecution and would not make a significant contribution to the public understanding of federal prosecutions or incarceration. It is significant that Schulz requests records that mention his name and Speedy Trial Act statistics for prosecutions in the district in which he was prosecuted. In *McClain v. United States Department of Justice,* 13 F.3d 220 (7th Cir.1993), the Seventh Circuit found that a former inmate's request for information concerning federal investigation and prosecution of him primarily served to facilitate a challenge to his conviction and therefore did not qualify as contributing significantly

to the public understanding of Government operations.

Schulz explains in his Declaration that he requested the information under FOIA for an investigation of U.S. Customs practices as it relates to his own federal prosecution, which he believes was undertaken without jurisdiction, because of its international context. He believes that investigation and disclosure of his allegedly unusual prosecution would "evoke a finding of public understanding." Declaration at ¶ 75.

■ The court finds that Plaintiff's interest in the information requested would primarily serve *his individual interests.* Moreover, the majority of the information that Mr. Schulz requested, including indictments, information about persons in custody, probation office records, and prosecution statistics, is not available under FOIA. Although there may be some public interest served by disclosing such information, disclosure of the available documents would not significantly contribute to public understanding of government operations, as required by FOIA.

*B. Provision of a Vaughn Index*

■ A Vaughn Index is a detailed explanation for non-disclosure of documents or portions of documents pursuant to a FOIA request. *See Vaughn v. Rosen,* 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974) ("[C]ourts will simply no longer accept conclusory and generalized allegations of exemptions ... but will require a relatively detailed analysis in manageable segments."). The Third Circuit has stated, "[t]here is no set formula for a *Vaughn* index; subsequent decisions from the D.C. Circuit have explained that it is the function, not the form, which is important." *Hinton v. Dep't of Justice,* 844 F.2d 126, 129 (3d Cir.1988). The *Hinton* court found that, at a minimum, "the requester

and the trial judge [should] be able to derive from the index a clear explanation of why each document or portion of a document is putatively exempt from disclosure." *Id.* at 129.

In *Davin v. United States Dep't of Justice,* 60 F.3d 1043 (3d Cir.1995), the Third Circuit. held that a Vaughn index submitted by government was not specific enough in reciting the facts or linking documents with the claimed FOIA exemptions. The FBI in *Davin* provided the requester with an index of documents that would not be disclosed, coded to various justifications for non-disclosure. The court found these explanations too generic, citing the standard for the content of *Vaughn* indices announced by the D.C. Circuit:

> A withholding agency must describe *each* document of portion thereof withheld, and for each withholding it must discuss the consequences of disclosing the sought-after information .... Categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.

*Davin* at 1051 (quoting *King v. Dep't of Justice,* 830 F.2d 210, 233–34 (D.C.Cir. 1987)).

In their Motion for Reconsideration, the Government states that "[t]he basis for the withheld documents were clearly identified based upon their segregable parts." Motion at 4. The summary of the content of these letters provided by the Government convinces the court that they did not constitute "relatively detailed analysis in manageable segments" of the reasons for non-disclosure for each document, or portion thereof, withheld. The letters listed the various exemptions of FOIA, the Privacy Act, and the Federal Rules of Criminal Procedure that the EOUSA determined applicable to Schulz's requests. According to the Government, the letters also provid-

ed Schulz with "a standard sheet that explained each of these exemptions." *See* Motion for Reconsideration at 4–5. Although such a response may be adequate for an initial review of a FOIA request, letters providing "standard" explanations of exemptions do not serve the function of a Vaughn Index, which is to provide the requester with a detailed analysis relating his specific requests to statutory exemptions and discussing the consequences of disclosing each requested document.

The Government states that the time and effort necessary to produce a Vaughn Index for the volume of non-public material requested would be an undue burden on the government. It is unclear that the court should consider such factors, as the *Vaughn* court held, "The procedural requirements we have spelled out herein may impose a substantial burden on an agency seeking to avoid disclosure." *Vaughn* at 828.

█ If Schulz pays the search fee of $560.00 in full and requests any information that the government is able to disclose, he should receive, at his own expense, copies of those materials and a Vaughn Index, or its functional equivalent, for those materials which are not disclosed.

### C. Exhaustion of Remedies

The Plaintiff did not complete the Office of Information and Privacy administrative appeals process for his fee waiver request before filing this suit. The Government argues that Schulz is ineligible for a fee waiver because he failed to exhaust his administrative remedies by either paying the FOIA search fee or completing his administrative appeal. *See Voinche v. U.S. Dep't of the Air Force,* 983 F.2d 667 (5th Cir.1993) (holding that section of FOIA providing for fee waivers implies

that exhaustion of administrative remedies is required prior to seeking judicial relief); *Trueblood v. U.S. Dep't of Treasury,* 943 F.Supp. 64, 68 (D.D.C.1996) ("A plaintiff's FOIA suit is subject to dismissal for lack of subject matter jurisdiction if he fails to exhaust all administrative remedies."). According to FOIA, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions ...." 5 U.S.C. § 552(a)(6)(C)(i). The Third Circuit has adopted the holding of *Oglesby v. U.S. Department of the Army,* 920 F.2d 57, 61 (D.C.Cir.1990), that "if an agency responds to a FOIA request before the requester files suit, the ten-day constructive exhaustion provision ... no longer applies; actual exhaustion of administrative remedies is required." *McDonnell v. United States,* 4 F.3d 1227, 1240 (3d Cir. 1993).[6]

Schulz maintains that the EOUSA and the Probation Office did not respond to him in a timely manner, leading him to file this lawsuit in February 2001. Although Schulz did file an administrative appeal on July 10, 2001,the Government maintained it had no duty to act on the appeal, including the request for a fee waiver and a Vaughn Index, because the appeal was filed five months after Schulz filed this civil suit. As the court agrees with the Government that Schulz is not entitled to a fee waiver denial on the merits, the issue of exhaustion for purposes of a fee waiver is moot.

■ The Government also asserts that Plaintiff's request for a Vaughn Index is not timely because he has failed to either complete his administrative appeals or pay the assessed search fee. *See Schwarz v. Dep't of Treasury,* 131 F.Supp.2d 142, 147

(D.D.C.2000) (finding that requesters are not entitled to Vaughn Index on an "initial request"); *Edmond v. United States Attorney,* 959 F.Supp. 1, 5 (D.D.C.1997) (finding request for Vaughn Index premature where agency had not processed plaintiff's request). In this case, if Schulz pays the assessed fee, his request for a Vaughn Index will not be premature. The EOUSA has processed Plaintiff's request and provided him a summary of what information it is permitted to disclose. Plaintiff has filed a federal suit on the *Vaughn* issue and appealed this court's decision to the Third Circuit. The Court of Appeals remanded to district court for a determination of the *Vaughn* issue and the Government filed a Motion requesting reconsideration of this court's Order granting him a Vaughn Index. Should Schulz pay the assessed search fee, he is eligible to receive any documents that the government may disclose and a Vaughn Index for those documents that will not be disclosed.

An appropriate Order follows.

**AND NOW,** this 6th day of March, 2003, it is hereby **ORDERED** that Defendants' Motion for Reconsideration is **GRANTED IN PART.** The Plaintiff is not entitled to any waiver or reduction of the fees for his FOIA requests. Plaintiff is, however, entitled to a Vaughn Index for any withheld documents, upon his payment of the assessed search fee in full. This case is closed for statistical purposes.

---

6. The current deadline is twenty days. *See* 5 U.S.C. § 552(a)(6)(A)(i).